UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


**JODANA NUNEZ,**
                **Plaintiff**

**v.**                                                               **Civil Action No.**
                                                                              **3:06CV26-J**

**MICHAEL J. ASTRUE, Commissioner**
 **Social Security Administration,**
                **Defendant**


### MEMORANDUM OPINION

    This case presents plaintiff Jodana Nunez's challenge to the decision of the Commissioner denying her claim to disability insurance benefits.  After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

    Ms. Nunez filed her application in December of 2003, alleging that she had been unable to engage in any substantial gainful activity since April of that year.  After a hearing, the Administrative Law Judge ("ALJ") determined that her vasculitis, lumbar sprain, sciatica, mood disorder, bipolar disorder and borderline personality traits were severe impairments that prevented her from performing any of her past relevant work.  The ALJ further found, however, that she retained the residual functional capacity for performing a significant range of sedentary work.

    If the Commissioner's decision is supported by substantial evidence, the reviewing

Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

      Ms. Nunez contends that the Commissioner erred in picking among the pieces of evidence rather than considering the record as a whole. In the course of this, she argues, the Commissioner mistakenly identified her hip problems as "lumbar sprain" and "sciatica." rather than the "bilateral sacroiliac joint dysfunction," first identified by Dr. Aggarwal in August of 2003 (Tr. 203). Overall, she argues, the ALJ failed to properly evaluate plaintiff's testimonial credibility. This is of central importance to plaintiff's case, given that much of her case is based on her complaints of pain.

      While pain may support a claim of disability, the claimant's subjective assertions are not sufficient. 20 C.F.R. Sec. 404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). If there is objective medical evidence of an underlying medical condition, the ALJ is required to determine whether objective medical evidence confirms the severity of the alleged pain, or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994), Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991); Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ may

consider muscle spasms, atrophy, reflex abnormalities, neurological deficits, loss of sensation, household and social activities as well as the type of medication used to alleviate the pain. 20 C.F.R. 416.929©)(3); Jones, supra, at 1370; Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990).

A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

In this case, the ALJ found Ms. Nunez's "testimony regarding severity and chronicity of her pain and emotional and functional limitations not fully credible." Tr. 18. His stated reasons for this finding were that the x-rays and MRI studies were either "negative" or showed

"minimal" abnormality, the functional capacity evaluation upon which she relied was completed not by her doctor but by a physical therapist, and Dr. Aggarwahl's statement of her limitations was inconsistent with the restrictions set out in his office notes. Tr. 18-19.

Ms. Nunez agrees that the ALJ's description of the radiological studies is accurate, but argues that it is incomplete in that it fails to mention her diagnosis of bilateral sacroiliac joint dysfunction, identified as a chronic problem by her treating physicians. She directs the Court's attention to Dr. Aggarwal's diagnosis of August 18, 2003, which followed a physical exam that showed some tenderness and some reduction of range of motion due to complaints of pain. Tr. 203. Dr. Aggarwal did a sacroiliac joint injection, which she said helped "quite a bit." Tr. 201. Following an epidural injection, which she said helped "approximately 50%," Dr. Aggarwal's partner, Dr. Chou, returned Ms. Nunez to work with the restrictions subsequently incorporated by the ALJ in his hypotheticals posed to the vocational expert. Tr. 199, 371-372. When insurance problems caused Ms. Nunez to stop seeing Dr. Aggarwal and to go instead to Family Health Centers, Inc., the previous diagnosis of chronic SI joint dysfunction was copied into her records as part of the nurse's notes. Tr. 231.

Ms. Nunez finds fault with the ALJ's reliance on the examination performed by Dr. Schiller in July of 2003. As part of Dr. Schiller's report, he noted, "There was tenderness on the most gentle palpation of the sacroiliac and lumbar regions," a reaction he plainly found incredible. After his examination and consideration of her complaints, Dr. Schiller concluded "there is very little wrong with her" and "she should go back to work." Tr. 100. She contends that the subsequent two years of medical notes contradict his conclusion, but this does not appear to be a correct assessment of the record. In fact, she was treated for pain based on her

complaints, not based on objective findings, and even those treating physicians released her to return to work with certain restrictions.

Ms. Nunez is concerned about the ALJ's reliance on treating notes from the Family Health Center, notes that led him to conclude that her emotional problems were due in large part to dysfunctionality in her family setting. However, she is not suggesting that her emotional problems are more severe than found by the ALJ; rather, she asks that psychiatric notes referring to "depression secondary to chronic pain" be treated as affirmative evidence of severe pain. While it may represent some evidence of consistency of her complaints, it does not represent evidence that her complaints of pain were based on a medically-determinable impairment.

The Court is somewhat puzzled by the ALJ's total disregard of the Functional Capacity Evaluation performed by Physiotherapy Associates at the request of Dr. Chou "to assess current level of physical capacities in order to determine the ability to return to same job with same employer." Tr. 186. While such a report, standing alone, is incompetent to establish the existence of an impairment, it is difficult to perceive the justification for ignoring it altogether in the course of attempting to evaluate the credibility of subjective complaints. With respect to the issues of pain and exertional limitation, however, omission of reliance on the report was harmless, as it could not have made a difference in the outcome of the case: Ms. Mattingly concluded that Ms. Nunez would not be able to return to her job as shift manager at Dairy Queen, and the ALJ reached the same conclusion. Ms. Mattingly assessed exertional limitations consistent with sedentary work, which is what the ALJ determined Ms. Nunez would be able to do. Furthermore, there are specific credibility issues raised by the report itself. For example, the report (dated December 2, 2003) records Ms. Nunez's denial that the trigger point and epidural

injections had given her any relief; only six weeks earlier, Ms. Nunez reported to Dr. Chou that the epidural had given 50% relief (Tr. 199), and she had previously reported receiving "quite a bit" of relief from the sacroiliac joint injection (Tr. 201). Similarly, Ms. Mattingly found the evaluation only "relatively reliable," and she identified some particular inconsistencies. Tr. 186.

The sole area in which the report could have affected the case was in Ms. Mattingly's concern about Ms. Nunez's heartrate abnormalities: "Ms. Nunez would not be able to tolerate an 8-hour work day at this time secondary to decreased cardiovascular and muscular endurance." Tr. 188. As to this matter, however, the report *was* properly disregarded. There is no objective medical evidence to establish a cardiovascular impairment, and such an impairment cannot be established by a non-medical source. Neither is there a basis for treating that impairment (and, therefore, that "no 8 hour day" restriction) as properly established by Dr. Chou's subsequent adoption, without comment, of the restrictions proposed by Ms. Mattingly.

The Court does not find legal error in the ALJ's analysis; thus, the question is whether, considering the record as a whole, substantial evidence supports the ALJ's conclusions. The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). This Court cannot say that it would have reached the same conclusion on this record, but neither can we say that there is not substantial evidence to support the ALJ's decision. Under such circumstances, this

Court's duty to affirm is clear.

An order in conformity has this day entered.